Mrs. Lucien A. ST. JULIEN, Individually, and as natural tutrix of the minor children Lisa Ann and Nicole Marie St. Julien, and as administratrix of the Estate of Lucien A. St. Julien, Plaintiff,

v.

DIAMOND M DRILLING et al., Intervenor, Argonaut Southwest Insurance Co., Defendants.

Civ. A. No. 74-1402.

United States District Court, E. D. Louisiana.

Aug. 21, 1975.

as a stabbing board, and guided the casing into its proper place. His duties were the same whether the well was being drilled on dry land or from a fixed platform erected over water or from a submersible rig. He performed 39% of his work on dry land locations.

In April, 1974, St. Julien was working on a submersible rig owned by Diamond M, located offshore but in Louisiana territorial waters. Diamond M had been engaged by Texaco to drill a well; Texaco had contracted separately with Frank's to render services in connection with that operation. The drilling barge was submerged in twelve feet of water and attached by drilling pipe to the bed beneath the water. It had been floated to that location, and it was contemplated that, after drilling was completed, it would again be moved. St. Julien had not been aboard the rig when it was afloat nor would he remain there after the well was completed, when the barge would be refloated. He had been on the location only 19 hours when he met death in the course of his work. His personal representative sued both Texaco and Diamond M for negligence. No contention was made that St. Julien was a member of the crew of the vessel; it was conceded by the plaintiff that he did not have the necessary more or less permanent connection with a vessel and hence was not covered by the Jones Act. Summary judgment was rendered declaring that St. Julien was not a member of the crew of the rig.

Diamond M ultimately settled with the plaintiff. It asserts third-party claims for indemnity or contribution against Frank's and Frank's insurer, the Argonaut Southwest Insurance Company (the Argonaut). Several theories are advanced. Diamond M claims that both third-party defendants are liable for contractual indemnity, delictual indemnity, or contribution; and that, even if Frank's may not be held liable, it may recover from Argonaut on the theory that Diamond M was a third-party beneficiary of the contract of in-

Patrick A. Juneau, Jr., Lafayette, La., for plaintiff.

Charles E. Lugenbuhl, B. Ralph Bailey, New Orleans, La., for defendant Frank's Casing Crew & Rental Tools, Inc. and Argonaut Southwest Ins. Co.

Robert M. Contois, Jr., New Orleans, La., for defendant Texaco, Inc.

Joseph L. Waitz, Houma, La., for defendant Diamond M. Drilling.

ALVIN B. RUBIN, District Judge:

Lucien St. Julien was employed by Frank's Casing Crew as a stabber. His job was to assist in running casing (pipe) into oil and gas wells. He worked on a board high in the derrick known

surance, or an additional insured under the policy.

## I. LIABILITY OF THE EMPLOYER

Resolution of the claims against Frank's for contractual indemnity, whether express or implicit, revolves about the answer to the question: is a worker engaged in drilling an oil well from a submersible drilling rig located in state territorial waters covered by the LHWCA, as amended in 1972? For, if St. Julien was covered by the LHWCA, the amendments of 1972 prohibit Diamond M from seeking indemnity from St. Julien's employer. 33 U.S.C. § 905 (b).

By one of those strange courses that maritime legal problems sometimes find, the question of St. Julien's status is no longer of concern to his family. They conceded before his claim was settled that he was not a Jones Act seaman; the plaintiff's claims were based on negligence of third persons and it was of no moment whether he was covered by the LHWCA, covered by the Louisiana State Workmen's Compensation Act, or in some sort of nautical limbo.

But Frank's, seeking the benefit of Section 905(b) of the LHWCA, which forbids a vessel to seek indemnity from an employer subject to the Act, contends that St. Julien was LHWCA-covered. Diamond M contends that he was not, to escape the LHWCA.

Prior to the 1972 LHWCA amendments, the Supreme Court decided that a worker who in the course of his duty was obliged to go on navigable waters, however briefly or sporadically, and who suffered an injury while in that historically maritime locality was covered by the LHWCA. *Calbeck v. Travelers Ins. Co.*, 1962, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368. *Calbeck* drew no distinction based on whether offshore waters were inside any particular limit; § 903 merely requires that the accident occur "upon the navigable waters of the United States. . . ." The Outer Continental Shelf Lands Act extends LHWCA coverage to workers on fixed platforms beyond State limits, although it makes no reference to injuries within that boundary. 43 U.S.C. § 1333(c). The purpose of the 1972 LHWCA amendments was to expand coverage; there is no evidence of a congressional intent to restrict coverage previously afforded. See Report of the Senate Subcommittee on Labor of the Committee on Labor and Public Welfare, 92d Cong., 2d Sess., (1972), p. 12; Report of the House Committee on Education and Labor, 92d Cong., 2d Sess. (1972), p. 10; see also Watson, Broadened Coverage under the LHWCA, 33 La.Law Rev. 683, 694 (1973). The Act now defines coverage as extending to "employees engaged in maritime employment." Now, as before the amendments, "workers who are not seamen but who nonetheless suffer injury on navigable waters are no doubt (or so the courts have been willing to assume) engaged in 'maritime employment.'" Gilmore and Black, The Law of Admiralty, 2d ed.1974, p. 428. As those authors state:

> The courts wisely decided, long ago, that, for the purpose of the Jones Act and the maritime law remedies, they would not distinguish between the deck hands and the waiters, bartenders, stewards, maids and hairdressers: going to sea was a sufficient participation in the risk to entitle the injured worker to his (or her) remedy. In the same way, the fact of waterfront employment should be taken to be a sufficient participation in the risk for the purpose of entitling the injured worker to claim LHCA benefits. Id. at p. 430.

See also Watson, supra, at 694.

St. Julien went down to the sea to work on a ship, albeit he was there only temporarily and the ship had characteristics not envisioned by Masefield's nostalgic 19th century poem. The vessel while not afloat was in navigation. *Powers v. Bethlehem Steel Corp.*, 1 Cir. 1973, 477 F.2d 643. His work was

sufficiently maritime to afford coverage by the amended LHWCA.

Once this marker is passed, the channel for travel is fixed. The 1972 LHWCA amendments wiped out the liability of LHWCA employers for contractual indemnity, express or implicit. 33 U.S.C. § 905(b). Frank's, St. Julien's employer, is therefore not liable in indemnity to the vessel. Diamond M's claims for delictual indemnity or contribution, on the thesis that Frank's was the sole active tortfeasor, or at least a joint one, must also fail. The exclusive liability provisions of § 905(a) bar claims for delictual indemnity or contribution. *Santoy v. Shell Oil Co.*, E.D.La.1974, 386 F.Supp. 905. See also *Halcyon Lines v. Haenn Ship Ceiling and Refitting Corp.*, 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318; *Cooper Stevedoring Co. v. Fritz Kopke*, 1974, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694.

It is unnecessary to determine whether there was in fact a contract between Frank's and Diamond M whereby Frank's was obligated to procure insurance protecting Diamond M, or whether such a contract would be valid in light of the 1972 amendments to the LHWCA. At the trial of the third-party complaint, counsel for Diamond M repeatedly stated that Diamond M was not asserting that Frank's had breached such a contract, but only that Diamond M was entitled to recover from the Argonaut. Tr. 78–80, 133.

Accordingly, Diamond M's claims against Frank's are DISMISSED.

## II. LIABILITY OF THE EMPLOYER'S INSURER

■ Of course, the claims against the Argonaut as *Frank's* insurer must fail for the reasons set forth above. The exclusive liability provisions of the Act, sections 905(a) and 933(i), bar a direct action against the employer's insurer as well as a suit against the employer. *Nations v. Morris*, 5 Cir. 1973, 483 F.2d 577.

■ Diamond M finally claims that it is a third-party beneficiary of the contract of insurance between Frank's and the Argonaut. Louisiana law governs the effect to be given this contract of insurance, delivered to a Louisiana insured in Louisiana, and negotiated through a Louisiana insurance agency, when the liability arose in state territorial waters. See *Mayronne Mud & Chemical Corp. v. T-W Drilling Co.*, E.D. La.1958, 168 F.Supp. 800, aff'd 5 Cir. 1959, 272 F.2d 710. See also *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 1955, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337; *Irwin v. Eagle Star Ins. Co.*, 5 Cir. 1972, 455 F.2d 827. In Louisiana, the key factor in determining whether the parties to a contract have entered a stipulation *pour autrui* (at the common law, a third party beneficiary contract) is the intent of the parties. See Smith, Third Party Beneficiaries in Louisiana: The Stipulation *Pour Auturi*, 11 Tul.L.Rev. 18 (1936). It is not uncommon to include a stipulation for the benefit of a third person in an insurance contract; the means used is to name the third party as an additional insured. This policy does name additional insureds.

While the policy contains waivers of subrogation and this might evidence some intention to confer a benefit on the parties who benefit by the waiver, Diamond M's name simply does not appear. Nor was there any evidence adduced at trial that the two parties to the contract of insurance, Frank's and Argonaut, intended that Diamond M would derive rights from the policy. The efforts of Diamond M's counsel to show that a contract existed between Diamond M and Frank's requiring Frank's to procure insurance avail the third-party plaintiff nothing; even if we assume that such a contract existed and obligated Frank's to procure insurance naming Diamond M as an additional insured, this would have no bearing on Argonaut's intentions.

Accordingly, the claims of Diamond M against the Argonaut are dismissed.