622 F.2d 1111
 Ronald FUSCO, Bernard Sullivan, and Director, Office of
Workers' Compensation Programs, United States
Department of Labor, Petitioners,
v.
PERINI NORTH RIVER ASSOCIATES, and Hartford Accident &
Indemnity Company, Respondents.
 Nos. 1377 to 1379, Dockets 79-4006, 79-4015, 79-4016.
 United States Court of Appeals,
Second Circuit.
 June 4, 1980.
As Amended on Denial of Rehearing Aug. 19, 1980.
 
 Before MESKILL, Circuit Judge,* and WYZANSKI, Senior District judge.**
 WYZANSKI, Senior District Judge:
 This case is before us on a remand from the Supreme Court of the United States.
 Perini No. River v. Fusco, 444 U.S. 1028, 100 S.Ct. 697, 62 L.Ed.2d 664 (1980), vacated our judgment in Fusco et al. v. Perini North River Associates et al., 601 F.2d 659 (2nd Cir. 1979) and remanded the case to us "for further consideration in light of P.C. Pfeiffer Co. v. Ford, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979)," Mr. Justice Brennan, Mr. Justice Marshall and Mr. Justice Blackmun dissenting.
 
 
 1
 As shown in our original opinion in Fusco v. Perini North River Associates, supra, p. 661, this case involves two separate claims for compensation under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), as amended in 1972, 86 Stat. 1251, 33 U.S.C. § 901 (1970 ed., Supp. V), et seq. Each claimant was injured over navigable waters while engaged in constructing a sewage disposal project extending over the water.
 
 
 2
 The claimants contended that when injured they were "employees" within § 2(3) of LHWCA on the broad ground that each was "engaged in maritime employment" and on the narrow ground that each was a "harborworker."[1]
 
 
 3
 In Fusco's case Administrative Law Judge Lesser, without expressly ruling on the narrow ground that Fusco was a "harborworker," concluded that "at the time of his injury the Claimant was employed as a construction laborer engaged in the construction of a substructure for a sewage disposal plant over navigable waters, which employment was within the coverage of the Act." (p. 661). Accordingly, the ALJ allowed Fusco compensation.
 
 
 4
 In Sullivan's case Administrative Law Judge Feldman concluded that "Claimant is not a longshoreman, ship repairman, shipbuilder, or shipbreaker, nor could he be classified as a harbor worker," (p. 662), and, therefore, denied, him compensation under the LHWCA.
 
 
 5
 The Benefits Review Board (BRB) reversed the ALJ in Fusco and affirmed the ALJ in Sullivan on the ground that "the claimants herein were engaged in the construction of a sewage disposal plant, their employment did not have a realistically significant relationship to maritime activities involving navigation and commerce over navigable waters. It follows that claimants were not engaged in maritime employment pursuant to Section 2(3) and thus are not covered under the Act." (p. 662). Thus the BRB explicitly rejected the broad ground and implicitly rejected the narrow ground of the claims of both Fusco and Sullivan.
 
 
 6
 In our original opinion, without considering whether either claimant was a harborworker, we concluded that each claimant was a "person engaged in maritime employment" because the term "maritime employment" was to be interpreted geographically as including anyone "whose principal duties are performed on navigable waters." We, therefore, held that each claimant was entitled to compensation. (p. 669).
 
 
 7
 The conclusion upon which our earlier opinion rested has been rendered untenable by the holdings in P.C. Pfeiffer v. Ford, supra, (hereinafter called the Ford case) that, as used in § 2(3) of the LHWCA, "the term 'maritime employment' refers to the nature of a worker's activities," 100 S.Ct. at 335, and that it is "an occupational rather than a geographic concept." Ibid.
 
 
 8
 While the Ford case does not deal with construction workers and the opinion does not address itself to the question whether the 1972 amendments had the effect of depriving any class of workers of benefits which it would have enjoyed under the pre-1972 law, we read the opinion as precluding any application of the LHWCA, as amended in 1972, to an employee whose activities do not bear a significant relationship to navigation or to commerce on navigable waters.
 
 
 9
 That reading is consistent with the construction of § 2(3) of the LHWCA given in this case by the BRB, and given earlier by Weyerhaeuser Co. v. Gilmore, 528 F.2d 957 (9th Cir. 1975), cert. denied 429 U.S. 868, 97 S.Ct. 179, 50 L.Ed.2d 148 (1976). It is also consistent with the specific instances of "maritime employment" set forth in the § 2(3) definition of employee where the reference is to "any longshoreman or other person engaged in longshoring operations, any harborworker including a ship repairman, shipbuilder, and shipbreaker."
 
 
 10
 In the cases at bar the claimants' activities had nothing significant to do with navigation or with commerce on navigable waters. They were engaged exclusively in constructing a sewage disposal plant. It is not significant that the plant was being constructed so that sewage would not cause pollution of navigable waters; nor that the claimants performed part or all of their work while upon floating stages or upon barges. The only sense in which the claimants' activities were maritime was in the sense of their locus. To base a decision upon the locus of work is to found it upon a geographic concept a foundation precluded by the reasoning in the Ford case.
 
 
 11
 Parallel reasoning leads us to hold that the claimants were not within the meaning of § 2(3) "harborworkers." As there used, the term "harborworker" does not refer to the place where the employee works but to the activity he performs. To come within § 2(3) a harborworker's activity must relate to ships, as is shown by the test of § 2(3) which refers to a "harborworker including a ship repairman, shipbuilder, and shipbreaker."
 
 
 12
 In summary, on the basis of the reasoning in P.C. Pfeiffer Co. v. Ford, we deny the petitions of Fusco and Sullivan and affirm the BRB's November 30, 1978 order.
 
 
 13
 We adhere to our earlier opinion's conclusion that the Director's petition should be dismissed for lack of statutory standing.
 
 
 14
 Petitions of Fusco and Sullivan denied.
 
 
 15
 Petition of the Director dismissed for lack of statutory standing.
 
 On Rehearing
 
 16
 This case is before us on a petition for re-hearing filed by Sullivan.
 
 
 17
 Our Footnote 1 on page 1112 of our opinion dated June 4, 1980 erroneously stated that Sullivan had not claimed that he occasionally performed longshoring operations.
 
 
 18
 Nonetheless, our conclusion that Sullivan was not engaged in longshoring operations was correct. The evidence shows that his duties were exclusively in connection with the construction of a sewage disposal plant. When Sullivan unloaded a barge used in carrying construction materials from the shore to the point of construction, he was not performing operations which longshoremen perform. Longshoremen do not unload barges used in connection with construction of a structure which reaches from a point on shore to a point in the river.
 
 
 
 *
 Circuit Judge Gurfein, who presided over the panel when the appeal was first argued and decided, died on December 16, 1979 before this case had been remanded by the Supreme Court of the United States
 
 
 **
 Of the District of Massachusetts, sitting by designation
 
 
 [1]
 We decline to consider Sullivan's claim in his May 19, 1980 Supplemental Brief that he comes within § 2(3) because he occasionally performed longshoring operations. Sullivan did not make this claim in his petition for review to this court. Moreover evidence does not show that at the time he was injured Sullivan was performing longshoring operations