William PIPPEN, Jr., Plaintiff,

v.

SHELL OIL COMPANY and Inland Well Service, Inc., Defendants Third-Party Plaintiffs-Appellants,

v.

SUPERIOR ELECTRIC WIRELINE CORPORATION, Third-Party Defendant-Appellee.

No. 80–3176.

United States Court of Appeals, Fifth Circuit.*
Unit A

Nov. 13, 1981.

---

\* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

380

James E. Diaz, Gary J. Russo, Lafayette, La., for Inland Well Service.

James T. Guglielmo, Peter F. Caviness, Opelousas, La., for Shell Oil Co.

Allen, Gooch, Bourgeois, Randall K. Theunissen, Lafayette, La., for third-party defendant-appellee.

Before COLEMAN, GARZA and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

This is a maritime tort action resulting from an injury suffered by plaintiff William Pippen while working aboard a drilling barge owned and operated by Inland Well Service, Inc., and under lease and apparently chartered to Shell Oil Company. The case is before this Court upon appeal by Inland Well and Shell Oil from the district court's dismissal of their third-party actions against Superior Electric Wireline Corp., plaintiff Pippen's employer. Since the district court properly granted summary judgment for Superior Electric against Inland Well and Shell Oil, we affirm.

At the time of his injury, in December 1977, plaintiff Pippen was a wireline operator employed by Superior Electric and working aboard a vessel owned and operated by Inland Well. The vessel had been leased and/or chartered to Shell Oil to drill one or more gas wells in Louisiana territorial waters. Inland Well had apparently contracted with Superior Electric for the specialized services provided by Superior Electric employees. Pippen and two other employees of Superior Electric were sent to the rig to perforate and set packers on the rig. Specialized tools had been sent to the job site for this work.[1] As plaintiff and one

1. According to the plaintiff, the normal procedure was for the wireline operator to be called out to the rig about 24 hours before his job was actually to be performed in order to check the equipment. After the equipment was checked, the workers were considered to be on stand-by. In this case, the equipment had been brought on board by employees of Inland Well, and the plaintiff and his two co-workers had checked the equipment the day before plaintiff's accident. Just prior to plaintiff's accident, a Shell Oil employee had told plaintiff that they would be ready for him in a couple of hours and that plaintiff was to begin preparing his perforating guns immediately. Record, vol. 1, at 47. The guns had been sent out to the rig loaded in a

of his co-workers attempted to lift a 200-pound casing gun from a basket[2] on the rig, plaintiff slipped on some pipe lubricant and calcium chloride that was on the deck, fell, and was injured.

On December 14, 1978, plaintiff filed this action against Shell Oil and Inland Well, alleging that the unseaworthiness of the vessel and/or the concurrent negligence of both defendants caused plaintiff to be injured. On March 5, 1979, Inland Well filed a third-party action against Superior Electric, alleging that in the event Inland Well was held liable to plaintiff, then Superior Electric was liable to Inland Well for indemnity or contribution, together with all costs of defense. On September 17, 1979, Shell Oil filed a cross-claim and a third-party complaint against Inland Well, its insurer Highland Insurance Company, and Superior Electric, claiming that Shell Oil was entitled to indemnity or contribution, together with all costs of defense, from the third-party defendants. Superior Electric moved for summary judgment against Shell Oil and Inland Well on the ground that plaintiff Pippen was a longshoreman covered by the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C.A. §§ 901–950, *as amended by* LHWCA Amendments of 1972, Pub.L. No. 92–576, 86 Stat. 1251, and that under that Act, Shell Oil and Inland Well were not entitled to contribution or indemnity from plaintiff's employer. The district court granted Superior Electric's motion, declaring plaintiff a longshoreman and dismissing the third-party claims of Shell Oil and Inland Well.[3]

The ultimate issue in this case is whether the dismissal of the third-party claims brought by Shell Oil and Inland Well against Superior Electric was proper. To make this determination, it is necessary to examine whether the LHWCA as amended in 1972, which provides that the compensation liability of the employer is to be exclusive and which specifically prohibits indemnification actions by a vessel against the employer, applies to this action.

■ The coverage of the LHWCA is delineated in 33 U.S.C.A. § 903(a), which provides, in pertinent part:

Compensation shall be payable under this chapter in respect of disability or

---

basket. In order to prepare the guns, plaintiff had to remove them from the basket and put top subs and firing subs on them. Then, when it came time for him actually to perform his job, he would only have to cap the guns with a blasting cap in order to use the perforating guns.

2. The "basket" was actually a metal box approximately 12 feet by 3 feet. Record, vol. 1, at 48.

3. Superior Electric's motion for summary judgment was heard on January 15, 1980 (in conjunction with a motion by Shell Oil to strike the jury). The district court made the following determination:

IT IS ORDERED:
(1) That plaintiff is entitled to a jury against Inland Well Service under 905(b);
(2) That the claim of Inland Well Service against Superior is dismissed;
(3) That all claims of Shell against Superior premised on a tort theory are dismissed.
IT IS FURTHER ORDERED that Shell Oil Company is allowed fifteen (15) days from this date within which to file a contract in the record of this case; and that if no contract is filed, and counsel call this to the Court's

attention, any claims based on the contract will be stricken.
IT IS FURTHER ORDERED that the oral motion by Superior Electric Wireline Corp. for entry of a Rule 54(b) judgment upon the expiration of fifteen (15) days will be granted if no contract is filed by Shell Oil Company.
IT IS FURTHER ORDERED that counsel for movers prepare and submit a formal orders [*sic*] for signature of the Court in keeping with the foregoing rulings.

Record, vol. 1, at 196. Inland Well filed a motion pursuant to Fed.R.Civ.P. 59(e) to set aside the January 15 judgment with respect to plaintiff's right to a trial by jury only. On February 1, 1980, the district court entered a Rule 54(b) judgment, granting Superior Electric's motions for summary judgment and dismissing with prejudice the claims of Inland Well and Shell Oil against Superior Electric. On February 7, a motion to alter or amend the judgment with respect to plaintiff's right to a trial by jury was filed by Shell Oil. Although no disposition of the motions to alter or amend the judgment appears in the record, at oral argument on appeal, all parties stipulated that there were no motions pending before the district court. The issue of plaintiff's right to a trial by jury is not before this Court on appeal.

death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel).

An employee is defined by the Act as: any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.

*Id.* § 902(3). Thus, to trigger the application of the Act, a dual situs, *id.* § 903(a), and status, *id.* § 902(3), test must be met.[4] There is no contention here by any party that plaintiff fails to satisfy the situs test; the only issue is whether he meets the status test, *i. e.*, whether he was engaged in maritime employment at the time of his injury.[5]

■■■ Maritime employment is an occupational concept that is dependent upon the nature of the employee's activities. *P. C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 100 S.Ct. 328, 335, 62 L.Ed.2d 225 (1979). In order to determine whether an employee's work is maritime in nature, this Court has held that "we must look to the purpose of the work, not solely to the particular skills used." *Trotti & Thompson v. Crawford*, 631 F.2d 1214, 1221 n. 16 (5th Cir. 1980) (carpenter constructing pier was engaged in maritime employment). The relevant inquiry in determining whether an employee was engaged in maritime employment is whether his activities had a "'realistically significant relationship to traditional maritime activity.'" *Mississippi Coast Marine, Inc. v. Bosarge*, 637 F.2d 994, 998 (5th Cir. 1981) (carpentry work on wooden thirty-foot pleasure boat resting on blocks was maritime employment) (quoting *Weyerhaeuser Co. v. Gilmore*, 528 F.2d 957, 961 (9th Cir. 1975), *cert. denied*, 429 U.S. 868, 97 S.Ct. 179, 50 L.Ed.2d 148 (1976)). *Fusco v. Perini North River Associates*, 622 F.2d 1111, 1113 (2d Cir. 1980) (maritime employment refers to activities that "bear a significant relationship to navigation or to commerce on navigable waters"), *cert. denied*, 449 U.S. 1131, 101 S.Ct. 953, 67 L.Ed.2d 119 (1981).

In *Odom Construction Co. v. United States Department of Labor*, 622 F.2d 110 (5th Cir. 1980), *cert. denied*, 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 614 (1981), this Court held that a land-based construction worker who was injured while moving four large concrete blocks that had been located on the bank of a navigable canal, but had sunk into the water because of erosion, was engaged in maritime employment. The Court stated:

Moving the blocks directly furthered maritime commerce. By tying up to the blocks, barges were moored and held in

---

**4.** According to *Trotti & Thompson v. Crawford*, 631 F.2d 1214, 1216 n.5 (5th Cir. 1980), "[t]here is arguably a third jurisdictional confine: [the employer] must have been a statutory employer within the meaning of 902(4)." No party, either before the district court or before this Court, has alleged that this jurisdictional confine was not satisfied.

**5.** There is no contention that plaintiff Pippen is a seaman covered by the Jones Act; all parties are in agreement that he lacks the requisite permanent connexity to a vessel necessary for seaman status.

The Outer Continental Shelf Lands Act (OCS-LA), 43 U.S.C.A. §§ 1331–1356 (1964 & Supp. 1980), automatically extends the coverage of the LHWCA to provide compensation for injuries to employees that occur on the Outer Continental Shelf (located beyond three miles of the shoreline of Louisiana). *Id.* § 1333 (Supp. 1980). *See Roberts v. Williams-McWilliams Co.*, 648 F.2d 255, 257 n. 2 (5th Cir. 1981); *Guidry v. Continental Oil Co.*, 640 F.2d 523, 530 n. 21 (5th Cir. 1981); *Longmire v. Seas Drilling Co.*, 610 F.2d 1342, 1351–52 (5th Cir. 1980). Here, since the injury occurred within the three-mile limit, the OCSLA does not apply to adopt the LHWCA automatically. Thus, Superior Electric can only claim rights under the LHWCA if plaintiff Pippen satisfies the definition of maritime employment in § 902(3) of the LHWCA.

place before loading until they could be moved to the loading facilities and, after loading, until they could be taken away by tugs. Relocating the blocks after they had fallen or slipped into the water from erosion is not the type of job peripherally related to maritime matters that Congress said was not to be covered by the LHWCA, such as trans-shipment of stored cargo or clerical work.

*Id.* at 113. Thus, the Court concluded that since plaintiff's job had a realistically significant relationship to traditional maritime activity involving navigation and commerce on navigable waters, plaintiff was engaged in maritime employment at the time of his injury.[6]

6. In *Odom*, the appellants also contended that even if the employee "was doing maritime work at the time of his injury, he is not a covered employee because he spent the great majority of his time doing indisputably land-based jobs." 622 F.2d at 113. The Court stated that arguably its decision that the employee was covered by the LHWCA "could be based solely upon the foregoing conclusion that he was engaged in maritime work at the time of his injury." *Id.* In addition, however, the Court noted that where a significant part of the employer's overall work was maritime—as it was in the case before that Court—the Act favored coverage.

In the instant case, all parties agree that an employee who does not engage in maritime activity by occupation, but who is engaged in maritime employment at the time of his injury, satisfies the § 902(3) status test. Since no party contests this characterization of the law, this Court need not decide whether it is correct. Whether or not it is correct, however, neither Pippen in particular, nor Superior Electric employees in general, spend the majority of their time performing indisputably land-based jobs. Indeed, a substantial part of their work is performed offshore. In his deposition, Pippen stated that he worked mostly offshore and on vessels. When asked about the amount of time he worked on fixed platforms as opposed to jack-up rigs and barges, he estimated that 75% of his work was performed on inland barges and floaters. Record, vol. 1, at 43. In addition, he testified that only about 10% of the work done by Superior Electric was done on land. *Id.* at 99–100. *See Boudloche v. Howard Trucking Co.*, 632 F.2d 1346 (5th Cir. 1980) (claimant who regularly performs indisputably maritime operations, even where those operations constitute only a small portion of his overall working time, occupies a status covered

In the instant case, plaintiff Pippen was a wireline operator. At the time of his injury he was preparing to set packers for perforation.[7] The function of the vessel on which Pippen was working was to drill gas wells; consequently, Pippen's work was essential to the function of the vessel. More importantly, Pippen's job was necessary to the completion of the offshore drilling process. As discussed above, to determine whether the status test is satisfied, it is necessary to examine the nature and purpose of the employee's activities and to determine whether those activities had a realistically significant relationship to maritime navigation or commerce. The "significant relationship" requirement can be met when the purpose of the employee's activi-

by the Act), *cert. denied,* 452 U.S. 915, 101 S.Ct. 3049, 69 L.Ed.2d 418 (1981).

7. Superior Electric compares Pippen's work to that of the employee in *St. Julien v. Diamond M Drilling,* 403 F.Supp. 1256 (E.D.La.1975). There, the employee was a stabber whose job was to assist in running casing (pipe) into oil and gas wells. At the time of his death, he was working offshore on a submersible drilling rig. The court found that the LHWCA applied to the action. It noted that there was no evidence that the 1972 amendments to the LHWCA, which replaced the original situs test with a dual situs and status test, were intended to restrict the prior coverage of workers injured on navigable waters. *Id.* at 1258. Thus, according to the *St. Julien* court, any worker who would have been covered prior to the 1972 amendments (because he satisfied the situs test) would also be covered after the 1972 amendments; workers who were injured on navigable waters would be assumed to be engaged in maritime employment. The Supreme Court's holding in *Pfeiffer* has apparently disaffirmed that analysis. In *Pfeiffer,* the Supreme Court rejected the contention that the term maritime employment, as used in the § 902(3) status test, incorporates a geographic limitation. Rather, the Court held that maritime employment "embod[ies] an occupational rather than a geographic concept," and "refers to the nature of a worker's activities." 100 S.Ct. at 335. Still, the district court in *St. Julien* also based its holding on an alternate ground—that the work performed by the employee "was sufficiently maritime to afford coverage by the amended LHWCA." 403 F.Supp. at 1259. To the extent that the *St. Julien* court considered a stabber to be engaged in maritime employment, that case provides support for Superior Electric's claim that Pippen was engaged in maritime employment.

ties is to facilitate maritime commerce.[8] Since offshore drilling—the discovery, recovery, and sale of oil and natural gas from the sea bottom—is maritime commerce,[9] it follows that the purpose of Pippen's work was to facilitate maritime commerce. Since the purpose of Pippen's work was to enable the vessel to perform its designated task—

8. We do not intend to suggest, however, that facilitation of maritime commerce is the only way to satisfy the status test.

9. To reach this conclusion, of course, we must to some extent look to location. Whereas onshore drilling and production cannot be considered maritime commerce, offshore drilling and production can be considered maritime commerce because of its location. Though *Pfeiffer* clearly stated that the status requirement "focuses upon the nature, not the location, of employment," 100 S.Ct. at 337, *Pfeiffer* did not forbid a consideration of location to determine whether activity is maritime commerce. Once it is determined that offshore drilling is maritime commerce, then it is necessary to examine the nature and purpose of the employee's work—location aside—to determine whether it has a realistically significant relationship to the maritime commerce. If so, the status test is satisfied.

The conclusion that offshore drilling is maritime commerce is not in conflict with *Sohyde Drilling & Marine Co. v. Coastal States Gas Producing Co.*, 644 F.2d 1132 (5th Cir. 1981). In examining the functions and roles of an operator of a gas well and a contractor performing workover operations on a gas well, the *Sohyde Drilling* Court concluded that "[t]he functions and roles of these parties was hardly of a peculiarly maritime nature." *Id.* at 1136. Likewise, we do not conclude that Pippen's function or role was of a peculiarly maritime nature. Indeed, his job could have been performed either offshore or on land. However, *Sohyde Drilling* did not hold that offshore drilling was not maritime commerce. Since this Court determined above that offshore drilling is maritime commerce, we conclude that, although Pippen's job was not itself peculiarly maritime in nature, the purpose of Pippen's job was to facilitate maritime commerce.

10. Inland Well cites this Court's recent decision in *Sohyde Drilling & Marine Co. v. Coastal States Gas Producing Co.*, 644 F.2d 1132 (5th Cir. 1981), as dispositive of the issue whether Pippen was engaged in maritime employment at the time of his injury. In that case, the Court held that a suit for property damage arising out of a blowout of a high pressure gas well was outside the Court's admiralty jurisdiction because the incident lacked a substantial maritime relationship. The blowout had occurred while the defendant was performing

offshore drilling—and since the work was, in addition, directed at facilitating maritime commerce, we are compelled to conclude that the work performed by Pippen had a realistically significant relationship to maritime commerce. Thus, Pippen was engaged in maritime employment at the time of his injury.[10]

workover operations on the plaintiff's gas well aboard a submersible drilling barge resting on the bottom of a dead-end dredged canal slip in Louisiana. The Court held that claims brought under the Admiralty Extension Act, 46 U.S. C.A. § 740, were subject to the requirement that the wrong asserted must bear a significant relationship to maritime activity. The Court noted that there were four factors to be considered in determining whether such a substantial maritime relationship existed: (1) The functions and roles of the parties; (2) the types of vehicles and instrumentalities involved; (3) the causation and type of injury; and (4) traditional concepts of the role of admiralty law. After a review of these factors, the Court was "unable to say that the circumstances surrounding the incident which gave rise to this action had a substantial maritime relationship." 644 F.2d at 1136.

In large part, *Sohyde Drilling* is inapposite to the issue before this Court—whether Pippen was engaged in maritime employment at the time of his injury and thus satisfies the status test of the LHWCA. The question facing the *Sohyde Drilling* Court was whether the wrong asserted—the injury complained of—bore a significant relationship to maritime activity. This Court need not decide whether Pippen's *injury* bore a significant relationship to maritime activity. Rather, we must decide whether the *work* in which Pippen was engaged at the time of his injury bore a significant relationship to maritime activity. The factors considered by the *Sohyde Drilling* Court to determine whether the wrong bore a significant relationship to maritime activity for purposes of the Admiralty Extension Act have not been applied in cases that considered whether an employee was engaged in maritime employment for purposes of the LHWCA. To whatever limited extent that the factual conclusions of the *Sohyde Drilling* Court might be relevant to the inquiry before this Court, they do not compel a conclusion that Pippen's activities did not have a realistically significant relationship to traditional maritime activity and that he was not engaged in maritime employment at the time of his injury. While the *Sohyde Drilling* Court did hold that an action involving property damage caused by the blowout of a gas well did not have a substantial maritime relationship, it did not hold that a wireline operator on an offshore drilling rig who was preparing to set packers

Inland Well and Shell Oil's reliance on *Fusco v. Perini North River Associates*, 622 F.2d 1111 (2d Cir. 1980), *cert. denied*, 449 U.S. 1131, 101 S.Ct. 953, 67 L.Ed.2d 119 (1981), is misplaced. In that case, the Second Circuit held that two claimants who were engaged in the construction of a sewage disposal plant were not engaged in maritime employment so as to come within the coverage of the LHWCA. It cannot easily be said that the construction of a sewage plant has any connection to traditional maritime activities. Similarly, *Thibodaux v. Atlantic Richfield Co.*, 580 F.2d 841 (5th Cir. 1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2820, 61 L.Ed.2d 274 (1979), is inapposite. There, the employee was an oil field maintenance and construction worker who drowned while being transported over navigable water to a land site at which he was to perform maintenance work on piping and flow lines. In examining the purpose of the work the employee was to perform, it is clear that there was no realistically significant connection between the maintenance of the onshore piping and flow lines and maritime navigation or commerce. In the case before this Court, on the other hand, as in *Odom*, Pippen's job was not "the type of job peripherally related to maritime matters that Congress said was not to be covered by the LHWCA." 622 F.2d at 113. Indeed, the performance of a function that is essential to the effectuation of the offshore drilling process is work that certainly has a realistically significant connection to traditional maritime activity.

■ The suggestion that Pippen was not engaged in maritime employment because

he was not performing longshoreman duties at the time of his injury is untenable. The LHWCA does not limit the scope of maritime employment to longshoring operations. Indeed, the Supreme Court stated, "We understand the word 'including' [in section 902(3)] to indicate that 'longshoring operations' comprise a part of the larger group of activities that make up 'maritime employment.'" *P.C. Pfeiffer Co.*, 100 S.Ct. at 335 n.7. "The status requirement therefore extends coverage to occupations beyond those specifically named by the statute." *Trotti & Thompson*, 631 F.2d at 1220. By virtue of the nature and purpose of Pippen's work, he was engaged in maritime employment at the time of his injury.[11]

■ Since Pippen was engaged in maritime employment at the time of his injury, and since that was the only jurisdictional confine of the LHWCA that was challenged by the parties, we conclude that the LHWCA is applicable to the instant lawsuit. Under the LHWCA, Inland Well's action against Superior Electric was properly dismissed. Inland Well was the owner of the vessel on which Pippen was working at the time of his injury. Section 905(b) of the LHWCA cuts off the right of a vessel— which is defined to include the vessel's owner[12]—to recover contribution or indemnity from the employer. Section 905(b), which was added by the 1972 amendments to the LHWCA, provides:

> (b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover

for perforation was not engaged in maritime employment.

**11.** Superior Electric relies heavily upon *Guidry v. Continental Oil Co.*, 640 F.2d 523 (5th Cir. 1981), to establish that Pippen was engaged in maritime employment. In *Guidry*, the Court held that the injured plaintiff, who was a pusher for a casing crew and who was "clearly performing duties essential to the function of the [vessel]—pushing casing for oil wells," *id.* at 529, was limited to recovery for his injuries under the LHWCA. *Id.* at 530. However, this holding was not a result of an examination of whether Guidry satisfied the situs and status tests of the LHWCA; rather, in that case, the

LHWCA was applicable by virtue of the OCS-LA because Guidry was injured on a vessel on the Outer Continental Shelf. *Id.* at 530 n.21. *See* note 5 *supra*.

**12.** Section 902(21) provides:

> The term "vessel" means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member.

damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

*See Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 1620–21, 68 L.Ed.2d 1 (1981) ("The 1972 amendments, particularly by adding § 905(b)," abolished "the stevedore's obligation to indemnify the shipowner if the latter was held liable to the longshoreman ...."). Since this section expressly forbids an action by the vessel against the employer for damages for an injury caused by the negligence of the vessel, the action by Inland Well against Superior Electric was properly dismissed.

The remaining issue is whether Shell Oil's third-party action against Superior Electric was properly dismissed. The question whether Shell Oil (a nonvessel) may bring an indemnity action against Superior Electric is more complicated than whether Inland Well (a vessel) may bring such an action against Superior Electric. The issue involving Shell Oil is not settled by simply applying the plain meaning of section 905(b), since that section makes explicit reference only to the liability of the employer *to the vessel.* A further examination of section 905 is therefore necessary to resolve this issue.

 Shell Oil contends that a contract of indemnification exists between it and Superior Electric and that, under the contract, Shell Oil's third-party action against Superior Electric is proper. Section 905(a), *inter alia,* prohibits actions against the employer by third parties for damages *"on account of"* the injury to the employee.[13] *See Fitzgerald v. Compania Naviera La Molinera,* 394 F.Supp. 402 (E.D.La.1974). Under the reasoning of *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) (vessel can recover over against employer for breach of express or implied warranty of workmanlike performance; such recovery was not barred by pre-1972 amendment section 905 because it was not recovery "on account of" the employee's injury), suits for indemnity that are not "on account of" the employee's injury are not barred by section 905(a). Thus, for instance, a suit for contract-based indemnity (based either on an express or implied contract) would not be barred by section 905(a).[14] In addition, it

**13.** Section 905(a) (which existed as section 905 prior to the 1972 amendments) provides:

The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal

representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee.

**14.** As stated above, § 905(a) prohibits actions by a third party against the employer "on

appears that an action by Shell Oil against Superior Electric based on an express or implied contract of indemnification is also not barred by section 905(b). That section expressly cuts off indemnity only to a "vessel" and makes no specific reference to the right of a third-party nonvessel, such as Shell Oil, to bring an indemnity action against the employer. Like the Second Circuit,

> we would hesitate to hold that § 905(b) by its own force cuts off the availability of *Ryan* indemnity to a non-vessel in all cases where the concurring negligence of a stevedoring company has caused inju-

ries to the latter's employees, ... for example, although we do not intend these to be exclusive, where there is a direct contractual relationship between the third party and the stevedore or where the third party is designated as a beneficiary of an express contract between the stevedore and a vessel.

*Zapico v. Bucyrus-Erie Co.*, 579 F.2d 714, 721–22 (2d Cir. 1978). Inasmuch as section 905(b) prohibits indemnity actions by vessels only, this Court would be reluctant to extend that prohibition to nonvessels.[15] *See Holden v. Placid Oil Co.*, 473 F.Supp. 1097,

---

account of" the injury or death of an employee. In the event of a suit by a third party against the employer based on a contract of indemnity—express or implied—the recovery against the employer is not on account of the injury—it is on account of the contract of indemnity. Similarly, though we have no such situation before us here, some types of tort claims for indemnity would apparently not be barred by § 905(a). The court in *Holden v. Placid Oil Co.*, 473 F.Supp. 1097 (E.D. La. 1979), for instance, held that:

> if a claim of indemnity founded in tort is premised on an alleged *duty owed by the indemnitor directly to the indemnitee*, such a claim is not barred by § 905(a). As is the case with claims of indemnity founded in contract, then, where a duty or obligation sounding in tort exists directly between the indemnitor and indemnitee, recovery of indemnity based on this duty or obligation is not "on account of" the employee's injury, and hence is not proscribed by § 905(a).

*Id.* at 1100–01 (emphasis in original). Since Shell Oil has not presented any evidence of an obligation in tort between it and Superior Electric that would cause Superior Electric to be liable to Shell Oil for indemnity, the district court's summary judgment on this ground was proper.

**15.** Refusing to extend section 905(b) to prohibit *Ryan* actions by nonvessels would be consistent with the approach taken in the recent Fifth Circuit case of *Aparicio v. Swan Lake*, 643 F.2d 1109 (5th Cir. 1981). In that case, harbor workers employed by Panama Canal Company brought suit against vessel owners alleging that they sustained personal injuries as a result of the vessels' unseaworthiness and the crews' negligence. (Although unseaworthiness actions are available only to seamen, the Supreme Court, in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), has long since created a *Sieracki* seaman status for longshoremen who do work that has customarily been done by a seaman.) The vessel

owners then filed third-party complaints against the employer, the Panama Canal Company, for indemnity, asserting that the company breached its warranty of workmanlike performance. The Court recognized that the 1972 amendments to the LHWCA specifically prohibit the vessel from seeking indemnity from the stevedore's employer. However, the injured employees were federally-employed harbor workers and so were not covered by the LHWCA; rather, they were covered by the Federal Employees' Compensation Act (FECA), 5 U.S.C.A. § 8101. The *Sieracki-Ryan* doctrine, which arose in the context of LHWCA employees and their private employers, has also been applied to federally-employed FECA employees and their government employers. The *Aparicio* Court held, however, that LHWCA § 905(b), which was enacted "to abolish the judicially-created *Sieracki-Ryan* cycle that had effectively nullified the exclusive liability provision of [the LHWCA]," did not apply to maritime workers outside the coverage of the LHWCA. 643 F.2d at 1115–16. The Court stated: "The statute manifests no intention to expand the abolition of the *Sieracki-Ryan* construct beyond the coverage of the LHWCA.... Had Congress intended to affect the substantive rights of persons not covered by the LHWCA, it could readily have manifested that intention." *Id.* at 1116. Similarly, there is no indication in the 1972 amendments to the LHWCA, or in their legislative history, evidencing a congressional intent to prevent nonvessels from bringing a *Ryan*-type action against the employer. The abolition of the employer's indemnification liability to the vessel was enacted as a quid pro quo for the elimination of the warranty of seaworthiness owed by the vessel to the *Sieracki* seamen and the limitation of the vessel's liability to negligence only. "No such *quid pro quo* was offered to non-vessels." *Zapico*, 579 F.2d at 721. Until Congress more specifically abrogates this judicial remedy of contractual indemnity owed to nonvessels by the employer, it would appear to continue to be available.

1099 (E.D. La. 1979) ("Since no party seeking indemnity here is a vessel owner, the explicit Congressional instructions provided in subsection (b) are not applicable, and this case must be resolved under the more general language of subsection (a)."). However, we need not reach the issue whether, after the 1972 amendments, a nonvessel is prohibited by section 905(b) from bringing a *Ryan*-type action for indemnity against the employer. Here, summary judgment for Superior Electric dismissing the claims of Shell Oil against Superior Electric was proper since Shell Oil failed to offer any evidence that an express or implied contract of indemnity existed between Shell Oil and Superior Electric.[16]

The district court's dismissal of the third-party claims of Shell Oil and Inland Well against Superior Electric is

AFFIRMED.

---

**16.** Superior Electric contends that Shell Oil was a time charterer of the vessel owned by Inland Well. Thus, Superior Electric argues that Shell Oil is barred by § 905(b) from bringing any action against the employer, since § 905(b) expressly prohibits indemnity actions by a vessel and since the definition of vessel includes charterers. There is no evidence in the record as to what type of arrangement existed between Shell Oil and Inland Well for the lease of the vessel; consequently, we cannot base our decision on this contention.