MARR EQUIPMENT CORPORATION *vs.* I.T.O. CORPORATION
OF NEW ENGLAND.[1]

Suffolk.   March 15, 1982. — July 26, 1982.

Present: ARMSTRONG, PERRETTA, & KASS, JJ.

*Indemnity.   Longshoremen's and Harbor Workers' Compensation Act.*

In an action brought by an injured longshoreman against the lessor of two
cranes used in unloading a ship, the lessor was not barred in seeking in-
demnity from a stevedore employing the longshoreman by the amend-
ment to the Longshoremen's and Harbor Workers' Compensation Act
prohibiting claims for indemnity by vessels against stevedores in actions
brought by injured employees of stevedores.   [233-235]

CIVIL ACTION commenced in the Superior Court on July 6,
1977.

The case was heard by *Young, J.*, on motion for summary
judgment.

*Cynthia J. Cohen & Robert L. Farrell* for the plaintiff.
*John B. Rest* for the defendant.

KASS, J.   Michael Horgan, a longshoreman, was employed
by I.T.O. Corporation of New England (ITO), a stevedor-
ing company.[2]  ITO leased two cranes from the Marr Equip-

---

[1] In the Superior Court the action began as Michael Horgan, plaintiff,
*vs.* Marr Equipment Corporation, defendant.  Marr Equipment Corpo-
ration, as third-party plaintiff, impleaded I.T.O. Corporation of New
England, Horgan's employer, and Costa Amatori, S.p.A., the owner of
the vessel on which the accident occurred.  This appeal concerns only
Marr Equipment Corporation and I.T.O. Corporation of New England.

[2] In the vocabulary of maritime cases, the "stevedore" is a company
which provides loading and unloading services to shipowners.  The
"stevedore" hires longshoremen, individuals who do the work.  The lin-
guistic root of "longshoreman" is apparent, i.e., someone who works
along the shore.  "Stevedore" comes from the Spanish "estibador", one
who stows.  Webster's Third New Intl. Dictionary 2239 (1971).

ment Corporation (Marr), for the purpose of unloading the S.S. Maria Costa, which was docked at Castle Island. During the unloading, Horgan claims to have been hurt while working in the hold of the ship. With respect to that injury he was entitled, under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 905, 933 (1976), to file a claim for worker's compensation. An injured longshoreman may also bring a negligence claim for actual damages against a nonemployer, 33 U.S.C. § 933 (1976), and Horgan did so by his action against Marr, based on Marr's failure to furnish proper and safe equipment and skilled and competent operators of the equipment. Because a maritime tort is involved, Federal law governs. See *Capozziello* v. *Brasileiro*, 443 F.2d 1155, 1157 (2d Cir. 1971); *Spadola* v. *Viking Yacht Co.*, 441 F.Supp. 798, 800 (S.D.N.Y. 1977). Marr's third-party claim against ITO is that there was an implied agreement that the lessee of the cranes (ITO) would indemnify Marr (the lessor) against liability arising out of the use of the cranes.[3]

Prior to 1972, as the trial judge observed in his memorandum and order on motions for summary judgment, "the right of a tortfeasor (usually a vessel found unseaworthy in an action by a longshoreman) to seek indemnity from the longshoreman's employer upon a theory of breach of an implied contract of workmanlike service was well established." That right was enunciated first in *Ryan Stevedoring Co.* v. *Pan-Atlantic S.S. Corp.*, 350 U.S. 124 (1956). The warranty implied in *Ryan* was one of workmanlike performance by the stevedore.

In 1972, Congress amended the LHWCA expressly for the purpose of undoing the round robin sort of litigation stimulated by *Ryan* and an important precursor, *Seas Shipping Co.* v. *Sieracki*, 328 U.S. 85 (1946), which had extended to longshoremen the right to recover from a vessel on a strict liability basis (the "unseaworthiness doctrine") for

---

[3] Marr has abandoned several other counts in its third-party complaint because they lacked either legal or factual basis.

conditions which often were actually created by the stevedore. See *Zapico* v. *Bucyrus-Erie Co.*, 579 F.2d 714, 721 (2d Cir. 1978). The 1972 amendments to the LHWCA eliminated the unseaworthiness doctrine and limited the liability of vessels to negligence. The liability of stevedores to their longshoremen was also limited to the statutory amounts in the LHWCA, which were increased by the 1972 amendments. Specifically, 33 U.S.C. § 905(b) was added, which reads in pertinent part: "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party . . . and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void."

This brings us, at long last, to the point of the instant case: did the 1972 amendments to the LHWCA prohibit a *nonvessel*, such as Marr, from seeking indemnification from the stevedore-employer on the basis of an implied contract of indemnity? A judge of the Superior Court ruled that Marr's indemnity complaint was barred by 33 U.S.C. § 905(b) and allowed a motion for summary judgment in favor of ITO. He then certified, in accordance with Mass. R.Civ.P. 54(b), 365 Mass. 821 (1974), that there was no just reason for delay and ordered entry of judgment for ITO and judgment entered accordingly.

The question posed in the preceding paragraph has evoked disparate responses from Federal District Courts which have had occasion to confront it. Several have given broad construction to the remedial purposes of the 1972 amendments and, although § 905(b) speaks of vessels, have extended to nonvessels the prohibition of indemnity claims against stevedores. See *Fitzgerald* v. *Compania Naviera La Molinera*, 394 F. Supp. 402, 411 (E.D. La. 1974); *S.S. Seatrain Louisiana* v. *California Stevedore & Ballast Co.*, 424 F. Supp. 180, 183 (N.D. Cal. 1976); *Spadola* v. *Viking Yacht Co.*, 441 F. Supp. at 802. Some have read the statute liter-

ally and not applied it to nonvessels. See *Crutchfield* v. *Atlas Offshore Boat Serv., Inc.,* 403 F. Supp. 920, 921 (E.D. La. 1975); *Brkaric* v. *Star Iron & Steel Co.,* 409 F. Supp. 516, 520-521 (E.D.N.Y. 1976); *Gould* v. *General Mills, Inc.,* 411 F. Supp. 1181, 1183 (W.D.N.Y. 1976).

Since those opinions were issued, the Courts of Appeal for the Second and Fifth Circuits have come to grips with the problem and each has reached the conclusion that the insulation from indemnity claims conferred upon stevedores by 33 U.S.C. § 905(b), the 1972 amendment, does not apply to claims by nonvessels. Apart from the authoritative weight of opinions of Federal appellate courts on questions involving statutes of the United States and maritime law, the reasoning of these decisions is persuasive. In *Zapico* v. *Bucyrus-Erie Co.,* 579 F.2d at 716-721, Judge Friendly reviewed the legislative history of the insertion of § 905(b) in the LHWCA. There is no need to rehearse at any length what has been so competently and recently done. In a nutshell, the court said that shipowners got a quid pro quo for the loss of their indemnity rights; they were relieved of strict liability. Owners of nonvessels received no such quid pro quo because they were not subject to the onus of strict liability in the first place. *Id.* at 721. "Given the clear statutory language [i.e., the reference in § 905(b) to vessels and the definition of vessels in 33 U.S.C. § 902(21) and 1 U.S.C. § 3 as every description of watercraft] and the absence of legislative history at variance with it, we would hesitate to hold that § 905(b) by its own force cuts off the availability of *Ryan* indemnity to a non-vessel in all cases where the concurring negligence of a stevedoring company has caused injuries to the latter's employees." *Id.* at 721-722.

In *Pippen* v. *Shell Oil Co.,* 661 F.2d 378, 386-388 (5th Cir. 1981), although the court did not need to reach the issue,[4] it expressed its reluctance "to extend that prohibition

---

[4] Shell Oil Company failed to offer any evidence that an express or implied contract of indemnity existed between it and the plaintiff's employer and, therefore, summary judgment was warranted against Shell Oil Company.

[against indemnity actions] to nonvessels." The court in *Pippen* also wrote, "Until Congress more specifically abrogates this judicial remedy of contractual indemnity owed to nonvessels by the employer, it would appear to continue to be available." *Id.* at 387 n.15. See also *Scindia Steam Nav. Co.* v. *De Los Santos*, 451 U.S. 156, 164-176 (1981), and *Rodriguez* v. *Compass Shipping Co.*, 451 U.S. 596, 616 (1981), in which the Supreme Court uses "ship," "vessel," "shipowner" and "vessel owner" interchangeably in its explanation of the legislative compromise behind the 1972 amendments to the LHWCA.

We follow the *Zapico* and *Pippen* opinions and conclude that Marr is not prohibited by the LHWCA from asserting indemnity claims against ITO. That alone does not put Marr in the winning column. The record is scanty as to the contractual relation between Marr and ITO. There is an affidavit by the vice-president and general manager of Marr which says that the operator of the crane could not see into the hold of the ship and relied upon directions from ITO employees when lifting cargo from the hold. The affidavit states further that, on the basis of prior dealings with ITO, Marr relied upon that company to provide competent and qualified employees to direct the operation of the crane safely. This is at best a toehold to establish an implied indemnity. Cf. *Williams* v. *Pennsylvania R.R.*, 313 F.2d 203, 212-213 (2d Cir. 1963); *Nieves* v. *Douglas S.S., Ltd.*, 451 F. Supp. 407, 411 (S.D.N.Y. 1978). Compare *Zapico* v. *Bucyrus-Erie Co.*, 579 F.2d at 721-723. A toehold, however, is enough to survive a motion for summary judgment. See *Noyes* v. *Quincy Mut. Fire Ins. Co.*, 7 Mass. App. Ct. 723, 725-727 (1979). What, if any, additional light can be shed on the contractual arrangements between Marr and ITO may appear at a trial on the merits.

*Judgment reversed.*