Oberlee **JENKINS**, Plaintiff-Appellant,

v.

**McDERMOTT, INC. and Tad Technical Services, Inc.**, Defendants-Appellees.

No. 83–3425.

United States Court of Appeals,
Fifth Circuit.

June 14, 1984.

---

Kierr, Gainsburgh, Benjamin, Fallon & Lewis, Nick F. Noriea, Jr., New Orleans, La., Diamond, Lattof & Gardner, Francis E. Leon, Jr., Mobile, Ala., for plaintiff-appellant.

Milling, Benson, Woodward, Hillyer, Pierson & Miller, John T. Nesser, III, John M. Golden, New Orleans, La., for McDermott, Inc.

Wood Brown, III, New Orleans, La., for Tad Technical Services, Inc.

Before RANDALL, TATE, and WILLIAMS, Circuit Judges.

TATE, Circuit Judge:

This tort suit, based upon diversity jurisdiction, was dismissed upon the district court's holding that the plaintiff's injuries, sustained at work, were covered by the state workers' compensation act and barred by a provision thereof. We reverse. We find that under *Thornton v. Brown & Root, Inc.*, 707 F.2d 149 (5th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 735, 79 L.Ed.2d 194 (1984), which was decided subsequent to the decision of the district court, the factual showing made for summary judgment does not exclude coverage of Jenkins' injury by the Longshoremen's and Harbor Workers' Act, which does not bar this suit against such negligent third person.

## I.

Jenkins, an Alabama plaintiff, appeals from the dismissal by summary judgment, Fed.R.Civ.P. 56, of his negligence, intentional tort, and strict liability claims, against McDermott, Inc., a non-Alabama corporation. Jurisdiction is based on diversity. 28 U.S.C. § 1332.[1]

Jenkins seeks recovery of damages that resulted from personal injuries sustained by him while employed by TAD Technical Services ("TAD") and working at the defendant McDermott's Bayou Black platform construction site in Louisiana. Pursuant to a contract between TAD and McDermott, TAD had sent Jenkins to McDermott's work-site to supplement the latter's permanent work-force in the performance of their regular welding and pipefitting work.

Jenkins' allegations are to the effect that his work-injuries were covered by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*, so that the compensation liability under that Act of his employer (TAD) does not affect his right to recover from another party (*i.e.*, here McDermott) damages caused by that party's negligence or fault liability, 33 U.S.C. §§ 905(b), 933(a); *see Pallas Shipping Agency, Ltd. v. Doris*, 461 U.S. 529, —, 103 S.Ct. 1991, 1994, 76 L.Ed.2d 120 (1983).

In granting summary judgment, the district court held, inter alia, that Jenkins' work-injury did not fall within the coverage of that federal act but, instead, was covered by the Louisiana Workers' Compensation Act, La.R.S. 23:1021 *et seq.* Under the state statute, the compensation remedy against the workman's employer (TAD) is

---

**1.** As a basis for federal jurisdiction of this tort suit against a non-employer third party, the plaintiff's complaint also asserted jurisdiction on the basis of the Longshoremen's and Harbor Workers' Act, 33 U.S.C. §§ 901 *et seq.* However, apart from claims made under the statutory coverage, 28 U.S.C. § 1331 (actions arising under federal law), the Act provides no independent basis of federal jurisdiction of claims arising out of injuries covered by it. *Lowe v. Ingalls Shipbuilding, a Division of Litton Systems, Inc.*, 723 F.2d 1173, 1177 n. 3 (5th Cir.1984); *Parker v. South Louisiana Contractors, Inc.*, 537 F.2d 113, 118 (5th Cir.), *reh'g denied,* 539 F.2d 710, *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1976).

an exclusive remedy against both it and a principal (McDermott) with whom it had contracted to perform part of the third party's business. La.R.S. 23:1061. Under present circumstances, therefore, the exclusive state-compensation remedy barred a tort remedy against McDermott for work-injuries arising out of the performance of its contract with TAD, Jenkins' employer. Accordingly, the district court dismissed this suit.

## II.

The accident occurred when Jenkins, upon reporting to the McDermott work-site, was assigned to work on the construction of an offshore drilling platform destined for use off the shores of Africa. The substructure on which Jenkins was working at the time of his injury was destined to form part of the completed platform then under construction at the McDermott site. Jenkins' injury itself occurred some 250 feet from Bayou Black, a navigable water. The factual showing was that, upon completion, the platform was to be slid over the ground to barges on the water, from which we infer (at least for summary judgment purposes) that McDermott's premises extended to the water's edge.

Without benefit of *Thornton, supra,* the district court concluded that no Longshoremen's Act coverage applied, because Jenkins was not engaged in maritime employment (the "status" test) and because his injury occurred on land 250 feet from the water's edge (the "situs" test).

## III.

■ To satisfy the jurisdictional requirements of the Longshoremen's Act, an injured claimant must satisfy the "status," 33 U.S.C. § 902(3), and "situs," 33 U.S.C. § 903(a), tests of the Act. *Northeast Marine Terminal Co., Inc. v. Caputo,* 432 U.S. 249, 264–65, 97 S.Ct. 2348, 2357, 53 L.Ed.2d 320 (1977). The district court, as noted, found that neither the "status" nor the "situs" requirements of the Longshoremen's Act were satisfied in this case.

■ The *"status"* test essentially involves an inquiry into whether the injured worker is an "employee" within the broadened shoreward coverage of the Longshoremen's Act. *Boudreaux v. American Workover, Inc.,* 680 F.2d 1034, 1040 (5th Cir.1982) (en banc). For purposes of the Longshoremen's Act, an "employee" is "any person engaged in maritime employment." 33 U.S.C. § 902(3). "The relevant inquiry in determining whether an employee was engaged in maritime employment is whether his activities had a 'realistically significant relationship to traditional maritime activities.'" *Pippin v. Shell Oil Company,* 661 F.2d 378, 382 (5th Cir.1981), *quoting Mississippi Coast Marine, Inc. v. Bosarge,* 637 F.2d 994, 998 (5th Cir.1981). That test is viable in evaluating, for purposes of the Longshoremen's Act, the status of a worker injured on land. *Herb's Welding v. Gray,* 703 F.2d 176, 179 (5th Cir.1983).

■ In order to satisfy the *"situs"* test of the Longshoremen's Act, the injury to a worker must have occurred upon "the navigable waters of the United States," which are defined to include "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing or building a vessel." 33 U.S.C. § 903(a); *Northeast Marine Terminal Co., Inc. v. Caputo, supra,* 432 U.S. at 279, 97 S.Ct. at 2365. Although courts have struggled in establishing the contours of an "adjoining area" within the meaning of the Longshoremen's Act, it is clear that a nexus with navigable waters is at least one situs requisite. *See Alford v. American Bridge Division, United States Steel Corporation,* 642 F.2d 807, 813 (5th Cir. 1981), *modified in part,* 655 F.2d 86, *modified in another part,* 668 F.2d 791, *cert. denied,* 455 U.S. 927, 102 S.Ct. 1292, 71 L.Ed.2d 472 (1983).

## IV.

### A. *Status*

■ In *Thornton v. Brown & Root, Inc.,* 707 F.2d 149 (5th Cir.1983), *cert. denied,*

—— U.S. ——, 104 S.Ct. 735, 79 L.Ed.2d 194 (1984), this court considered the Longshoremen's Act "status" of two workers injured in separate incidents in the construction of offshore stationary platforms to be used in the production of oil. Although as a part of his job, each man was required to assist in loading the platforms onto ocean-going barges, neither man was injured while assisting in a "load-out." Both men were injured on land.

In *Thornton,* the court reasoned that the "offshore drilling for and production of oil and gas is maritime commerce," *id* at 153, and that "[a] worker whose job directly facilitates that process is engaged in employment which has a substantial relationship to maritime commerce." *Id.* In *Thornton,* one of the injured workers was helping to construct a platform, and the other was assisting in the construction of the living quarters and the heliport for another platform. The *Thornton* court held that each worker had employee "status" within the meaning of the Longshoremen's Act.

Under *Thornton,* the plaintiff Jenkins clearly met the status test.

### B. *Situs*

There is no dispute in this case that Jenkins' injury occurred over 250 feet from the edge of the nearest navigable water, Bayou Black. The district court apparently relied upon that fact alone in concluding that Jenkins' injury did not occur on a covered "situs" within the meaning of the Longshoremen's Act. With that conclusion, we are unable to agree. We find, viewing for summary-judgment purposes the evidence in the light most favorable to Jenkins, that there did exist a sufficient nexus with navigable waters to find that the fabrication facility was a covered "situs."

In the first place, as we have indicated, the showing so far made suggests that McDermott's entire work-site was adjacent to navigable waters. The work-site, further, was being used for loading, repairing, or building platforms to be transported by navigable waters for use on navigable waters.

Jenkins testified at his deposition that upon completion of construction on the platform, it was to be slid along the ground and loaded onto a vessel on the navigable waters of Bayou Black. That platform, along with several others constructed at the Bayou Black facility, was destined for production off of the coast of Africa. Thus, the facility not only served as an area used for construction of the platform, but it also served as an area customarily used in the loading of cargo, the completed platforms, onto vessels in navigable waters. An area so used for the loading of cargo onto vessels is regarded as a covered situs under the Longshoremen's Act. 33 U.S.C. § 903(a).

The plaintiff Jenkins therefore met the "situs" test under the showing made. *See also Thornton, supra,* 707 F.2d at 154.

### V.

■ In an effort to sustain the district court judgment on other grounds, McDermott argues that, at any rate, Jenkins is shown to be a borrowed employee of McDermott and is therefore relegated exclusively to a compensation remedy against it. Aside from the circumstance that normally we do not pass upon contentions not raised or decided in the district court, it suffices to note that factual issues as to the assertion of this defense preclude summary judgment.

■ Likewise, TAD, the plaintiff's employer (and an appellee third party defendant), suggests affirmance of the summary judgment as a matter of law on another ground. TAD argues that, since this land injury to a land-based harbor employee is subject to concurrent coverage of both federal longshoremen's and state compensation acts, *Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980), concurrently applicable should be both the federal longshoremen's compensation remedy and also the state compensation-law bar to tort suits against third par-

ties in a principal-contractor relationship with the plaintiff's employer.

Issues sometimes do arise as to whether an injured workman has elected to pursue his federal compensation remedy *or* his state remedy, or instead as to whether his election of one necessarily excludes receiving not-inconsistent supplementary benefits from the other that do not amount to double recovery. *See* 4 Larson, Workmen's Compensation Law, §§ 89.50–89.74 (1984). In the present instance, however, the factual showing does not exclude that Jenkins has elected or will finally elect the federal remedy and not seek supplementary state compensation benefits, if indeed there are any not inconsistent with the federal remedy.[2]

In the present case, the state defense founded upon the state compensation act's coverage scheme, whereby in statutory exchange for his state compensation remedy an injured workman accepts it as the exclusive remedy against his employer and his employer's principal (as "statutory employer"), cannot survive a rejection of the state act's coverage and the election, instead, of the federal remedy. As TAD notes in its able brief, "Louisiana is the only jurisdiction that extends this exclusive remedy to statutory employers." (P. 4.) As we indicated in a somewhat similar context, "the legislatively intended uniformity of treatment of maritime and amphibious workers, regardless of situs", would be thwarted if "differing remedies would be provided to workmen injured in the performance of the identical" mineral-production employment, depending upon where the injury was sustained. *Boudreaux v. American Workover, Inc.*, 664 F.2d 463, 469 (5th Cir.1981), *aff'd*, 680 F.2d 1034 (5th Cir.1982) (en banc).

## VI.

For the reasons heretofore stated, we reverse the district court's summary judgment insofar as it dismissed Jenkins' claims against McDermott on negligence and strict-liability grounds. However, we find no error in the grant of summary judgment in favor of McDermott, insofar as Jenkins sought to impose liability upon McDermott on the basis of an intentional tort. Even construing for summary judgment purposes the evidence in the light most favorable to Jenkins, we find no factual showing that supports a prerequisite for intentional-tort liability, *i.e.*, that McDermott actively desired or was substantially certain that physical harm would result to its employees by the safety standards practiced at the Bayou Black construction facility. *See Penton v. Southern Shipbuilding, Inc.*, 667 F.2d 500, 501 (5th Cir.1982).

## Conclusion

Finding that the district court erred in dismissing Jenkins' negligence and strict liability claims against McDermott, we REVERSE as to those claims and REMAND for proceedings consistent with this opinion. We AFFIRM the summary dismissal of Jenkins' intentional tort claim.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

---

**2.** TAD's insurance carrier commenced voluntary compensation payment to Jenkins of Longshoremen's and Harbor Workers' Compensation Act benefits on May 5, 1982. Those weekly payments were of $293.34 each. At some time thereafter, the payments under the Longshoremen's Act were replaced by payments of $183.00 per week under the Louisiana Workman's Compensation Act. Jenkins' mere acceptance of the tendered benefits does not necessarily amount to an election of one remedy over the other. *See Calbeck v. Travelers Insurance Co.*, 370 U.S. 114, 131, 82 S.Ct. 1196, 1205–06, 8 L.Ed.2d 368 (1962); *Poche v. Avondale Shipyards, Inc.*, 339 So.2d 1212, 1225 (La.1977).