**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

Summary Calendar
Case No. 02-60211

_____

E J FIELDS MACHINE WORKS INC; LOUISIANA WORKERS'

COMPENSATION CORPORATION

     Petitioners

v.

EDMOND GUIDRY; DIRECTOR, OFFICE OF WORKER'S COMPENSATION

PROGRAMS, US DEPARTMENT OF LABOR

     Respondents

_____

Petition for Review from an Administrative Decision of the
Benefits Review Board
(BRB No.: 01-0445)

_____

December 3, 2002

Before KING, Chief Judge, and BARKSDALE and STEWART, Circuit

Judges.

PER CURIAM:[*]

    Claimant Edmond Guidry injured his back while cleaning a ball

bearing used in a vessel steering or propulsion system.  Both the

administrative law judge and the Department of Labor Benefits

---

[*]     Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not
precedent except under the limited circumstances set
forth in 5TH CIR. R. 47.5.4.

1

Review Board ("BRB") agreed that Guidry was injured on a maritime situs and required his employer, E.J. Fields Machine Works ("Fields"), to pay benefits to Guidry under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 et seq. (2000).[2]  The discrete issue on appeal is whether substantial evidence supports the finding that Guidry's accident occurred on a covered "situs" under the LHWCA.

For the reasons stated herein, we answer this question in the affirmative and affirm the determination of the BRB.

## FACTUAL AND PROCEDURAL PREDICATE

Fields operates a job shop in Morgan City, Louisiana, specializing in the repair, construction and fabrication of marine parts.  Its operations are carried out at three locations designated as Shop #1, Shop #2 and Shop #3.  All shops are located on Front Street, a two lane road in Morgan City that runs along the Atchafalaya River.

Guidry began employment with Fields in August 1998 as a welder fitter doing a variety of jobs, including rudder repairs, construction of manhole or hatch covers for boats and barges, shaft welding and boat repairs.  Guidry spent ninety percent of his time fabricating or repairing rudders and shafts.  Sixty percent of his

---

[2]  At the hearing before the administrative law judge, the Petitioners (Fields and the Louisiana Workers' Compensation Corporation) conceded that Guidry satisfied the status requirement under the LHWCA.  The only disputed issue for the administrative law judge to decide was whether Guidry also satisfied the situs requirement of the LHWCA.

work related to vessel repair work and forty percent related to new vessel construction. On August 24, 1999, Guidry injured his lower back in a work-related accident at Shop #2, where he principally worked.

On January 9, 2001, subsequent to a hearing, the administrative law judge issued an order finding that Shop #2 constituted an "other adjoining area" under the LHWCA. On February 4, 2002, the BRB affirmed the administrative law judge's finding that Guidry was injured on a maritime situs as supported by substantial evidence. Petitioners Fields and the Louisiana Workers' Compensation Corporation appeal this decision.

## STANDARD OF REVIEW

All parties agree that this court should review the decision of the BRB using the same standard the BRB applies to review a decision of the administrative law judge – to discern whether the decision is supported by substantial evidence and is in accordance with the law. SGS Control Services v. Director, Office of Workers' Compensation Programs, U.S. Department of Labor, 86 F.3d 438, 440 (5th Cir. 1996). "Substantial evidence" is evidence that provides "a substantial basis of fact from which the fact in issue can be reasonably inferred . . . more than a scintilla . . . more than create a suspicion . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Avondale Industries, Inc. v. Director, Office of Workers' Compensation

Programs, 977 F.2d 186, 189 (5th Cir. 1992). "The substantial evidence standard is less demanding than that of preponderance of the evidence, and the ALJ's decision need not constitute the sole inference that can be drawn from the facts." New Thoughts Finishing Co. v. Chilton, 118 F.3d 1028, 1030 (5th Cir. 1997). If the situs determination is supported by substantial evidence on the record as a whole, it will not be set aside by this court. Texports Stevedore Co. v. Winchester, 632 F.2d 504, 515 (5th Cir. 1980).

**ANALYSIS**

Coverage under the LHWCA is determined by the nature of the place of work at the moment of injury. See Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249 (1977). Petitioners dispute the conclusion that Guidry was injured on a maritime situs, averring that (1) Fields accepts business from both maritime and non-maritime customers with no particular advantage being gained by its proximity to the Atchafayala River, (2) non-maritime businesses and residences are located in the vicinity of its operations, and (3) Fields chose its original location because it was located in a commercial area of town, not because of its proximity to the water. However, as discussed below, the record evidence belies some of these averments. More importantly, Plaintiff's narrow approach to the definition of a maritime situs does not comport with the expansive definition our court uses.

4

## 1.   Definition of "Other Adjoining Area"

The 1972 amendments to the LHWCA broadened the definition of "navigable waters" (the "situs" of injury) to include "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or <u>other adjoining area</u> customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." 33 U.S.C. § 903(a) (2000) (emphasis added).[3] <u>See</u> <u>Northeast Marine Terminal Co. v. Caputo</u>, 432 U.S. 249, 268 (1977) ("The language of the 1972 Amendments is broad and suggests that we should take an expansive view of the extended coverage."). As the injury in this case did not occur at one of the specifically enumerated areas under the LHWCA, to qualify as a maritime situs, the location must fall within the definition of an "other adjoining area" under the LHWCA.

In <u>Texports Stevedore Co. v. Winchester</u>, 632 F.2d 504, 513-16 (5th Cir. 1980), this court discussed the parameters of the "other adjoining area" situs specified in the LHWCA. <u>Winchester</u> teaches us that the situs requirement compels a factual determination that cannot be hedged by mere labels placed on an area. There, we held that a gear room located five blocks from the nearest dock fell within the definition of a maritime situs under the LHWCA because

---

[3]    Prior to the 1972 amendments, the LHWCA extended coverage to a maritime worker only for injuries incurred "upon the navigable waters of the United States (including any dry dock)," and only if such workers could not recover compensation under state law.  33 U.S.C. § 903(a) (1970).

it was in the vicinity of a navigable waterway, it was as close to the docks as was feasible, and it had a nexus to maritime activity in that it was used to store gear utilized in the loading process. In so doing, we opined on the definition of the phrase "other adjoining area,"

> Although "adjoin" can be defined as "contiguous to" or "to border upon," it also is defined as "to be close to" or "to be near." "Adjoining" can mean "neighboring." To instill in the term its broader meanings is in keeping with the spirit of the congressional purposes. So long as the site is close to or in the vicinity of navigable waters, or in a neighboring area, an employee's injury can come within the LHW[C]A. To require absolute contiguity would be to reenact the hard lines that caused longshoremen to move continually in and out of coverage. It would frustrate the congressional objectives of providing uniform benefits and covering land-based maritime activity.
> . . .
> The answer to the question of where the boundaries are to an "area" is found right in the statute. The perimeter of an area is defined by function. The "area" must be one "customarily used by an employer in loading, unloading, repairing, or building a vessel." The statute does not require that the area's exclusive use be for maritime purposes so long as it is customarily used for significant maritime activity. The statute does not restrict coverage to only these areas used by the claimant's employer. It is an "area" if it is customarily used by any statutory employer.

Winchester, 632 F.2d at 514-15. Thus, under Winchester, so long as (1) the site is close to or in the vicinity of navigable waters, or in a neighboring area, and (2) the area is customarily used for significant maritime activity, the locale of an employee's injury can come within the "other adjoining area" situs under the LHWCA.

6

Id.

### 2. Application of the Definition

Shop #2 is in close proximity (100 to 175 feet) from the Atchafalaya River. Indeed, although Petitioners claim that you cannot see the Atchafalaya River from Shop #2, the only thing that separates it from the waterway is a street (Front Street) and a flood wall, making it accessible to the docks. Directly across from Shop #2 is a public fishing pier and a dock for pleasure boats. As Petitioners do not dispute that there are no other businesses between Shop #2, Front Street and the flood wall, the location is as close to the docks as is feasible.

Further, the area is customarily used for maritime activity. Next to Shop #2 on the same side of Front Street is Control Fire and Safety, a maritime business that supplies boat companies and shipyards with fire extinguishers and safety equipment. Next to Control Fire and Safety is Taylor Industries, a maritime related business that sells hoses, fittings, pipes, pumps and residential siding. Also next to Shop #2 is Shop #3. One-hundred percent of the work performed at Shop #3 relates to the fabrication and repair of vessel parts. Shop #1 is located approximately three blocks from Shop #2. Sixty percent of the work performed at Shop #1 relates to the fabrication and repair of vessel parts. Directly across the street from Shop #1 is Rio Fuel and Supply that fuels vessels. Next to Rio Fuel and Supply is a tank cleaning business.

7

Next in line comes Candy Fleet, Johnny Propeller Shop, Conrad Industries Shipyard, Steven Shipyard, and Lang Towing – all customers of Fields.  While Petitioners argue that non-maritime business – a warehouse, a dance studio, a frame shop, an antique shop, a clothing store, a studio, a hardware store, a caterer, and an electrical supply house – are also located in the area, this fact does not strip Shop #2 of its maritime status.  As stated by the Winchester court, "[t]he statute does not require that the area's exclusive use be for maritime purposes so long as it is customarily used for significant maritime activity."  632 F.2d at 515.  Significant maritime activity in the area close to Shop #2 is evident from the record.

Contrary to Fields's assertions, testimony further reflects that Fields gains a significant economic advantage from its location near other maritime businesses in the area.  Conrad Industries Shipyard, located in the area, makes up approximately twenty-five percent of Fields's total sales and accounted for approximately seventy-five percent of the work performed by Guidry. Richard Romaine, Fields's president, testified that Fields specializes in, but is not limited to, marine work, and that Fields recognizes that the location of its facility is advantageous in that it is near its customers.  As was the situs in Winchester, Shop #2 is a covered situs because it is in the vicinity of the navigable water, it is as close to the docks as is feasible, and it has a nexus to maritime activity.  See also Jenkins v. McDermott,

8

Inc., 734 F.2d 229, 231-32 (holding that plaintiff, who worked on the construction of an offshore drilling platform and whose injury occurred over 250 feet from navigable waters, satisfies the status and situs requirements of the LHWCA), vacated in part on other grounds, 734 F.2d 191 (5th Cir. 1984); Alford v. American Bridge Div., 642 F.2d 807, 813-14 (5th Cir. 1981) (finding that a shipyard which fabricated steel components for vessels is a covered situs); Brady-Hamilton Stevedore Co. v. Herron, 568 F.2d 137, 141-43 (9th Cir. 1978) (concluding that a gear locker located 2,050 feet outside the entrance of a port satisfies the situs test).

## CONCLUSION

Upon review of the record evidence and briefing submitted by the parties, we agree with the BRB that substantial evidence supports the administrative law judge's finding that Guidry's injury occurred on a maritime situs under the LHWCA.

We AFFIRM.