Kaplan, Mitchell H., J.
The plaintiff, Timothy J. Sullivan, is a certified public accountant and was an employee of the defendant Kahn, Litwin, Renza & Co., Ltd. (KLR), a public accounting firm. He became an employee of KLR when it acquired Sullivan, Shuman & Freedberg, LLC (SSF), a public accounting firm in which Sullivan was a principal. The acquisition was accomplished pursuant to a Practice Contribution and Asset Purchase Agreement (the Purchase Agreement) dated October 22, 2008. Under the terms of the Purchase Agreement, KLR was to pay Sullivan, $1 million plus interest for his goodwill in SSF (the Purchase Price) over a period of ten years, monthly payments to begin upon Sullivan’s retirement from KLR. Sullivan terminated his relationship with KLR effective February 21, 2014; however, KLR refused to make these payments to Sullivan. Sullivan filed this action against KLR alleging breach of contract. In its answer, KLR denied any liability to Sullivan and filed counterclaims against Sullivan for Breach of the Covenant of Good Faith and Fair Dealing (Count I) and Intentional Interference with Contractual Relations (Count II).[1] The case is before the court on cross motions for summary judgment. For the reasons that follow, Sullivan’s motion is ALLOWED, in part, and DENIED, in part, and KLR’s motion is DENIED.
FACTS
Although the parties filed a 92-page joint statement of purportedly material, relevant, undisputed facts, most of these facts are neither relevant nor undisputed. They are not relevant because the parties’ relationship is governed by carefully crafted, written contracts. Whether Sullivan was reluctant or enthusiastic to sell his interests in SSF to KLR, he did so pursuant to the Purchase Agreement. Whether thereafter he was a good, bad, or indifferent employee of KLR is likewise irrelevant, as KLR’s rights to withhold all or part of the Purchase Price were clearly stated in the Purchase Agreement and an Employment Agreement between KLR and Sullivan executed with the Purchase Agreement as an integrated part of the transaction. The following facts are either undisputed or viewed in the light most favorable to the non-moving party, a moving target given the cross motions.
KLR is a Rhode Island based accounting firm which sought to acquire SSF’s practice. The Purchase Agreement was entered into by SSF, KLR, Sullivan, and the other principals of SSF, in particular Shuman, as of October 22, 2008. While, under the terms of the Purchase Agreement, all of the principals of SSF (and several of its more junior accountants) became employees of KLR, the principals of SSF, other than Sullivan, also became owners of KLR. The sale was structured in the following manner: SSF assigned to Sullivan and the other SSF principals all of SSF’s assets (with certain exclusions not relevant to this case) including specifically its goodwill (client relationships) and thereafter dissolved; the other SSF principals transferred their interest in the SSF assets to KLR in return for KLR stock; and Sullivan sold his interests in SSF for $1 million (the Purchase Price). The terms of Sullivan’s sale of his SSF interests to KLR are set out in Section 3.4(a) of the Purchase Agreement. As relevant to this case, that section provides:
The Purchase Price shall be reduced by 50% in the event that [Sullivan] ceases to be employed by KLR prior to January 1, 2013 for any reason other than (i) . . . death or Permanent Disability . . . (ii) termination of such employment by KLR without Cause (as defined in the Employment Agreement of [Sullivan]), or (iii) termination of such employment by [Sullivan] for Good Reason (as defined in the Employment Agreement of [Sullivan]).
Under Section 3.5, payment of the Purchase Price was deferred until the first day of the first month after Sullivan’s employment with KLR ceased. Interest was to accrue on the Purchase Price and principal and accrued interest to be paid in equal installments over the ensuing 120 months. Subject to certain notice requirements, if KLR failed to make a monthly payment, Sullivan could declare the principal balance and accrued interest then remaining to be immediately due and payable. Further, in the event of litigation over payment of the Purchase Price, the prevailing party *453 could recover the costs and expenses of the suit including reasonable attorneys fees. The Purchase Agreement is 32 pages long, plus schedules. It was clearly drafted by sophisticated attorneys.
Sullivan’s Employment Agreement is also dated October 22, 2008. It too is a sophisticated, well-crafted document, and an essential part of the transaction pursuant to which KLR acquired the SSF practice. The Employment Agreement included a salary schedule for Sullivan pursuant to which he would receive $660,000 in 2009 and then decreasing amounts each year, reduced to $500,000 for 2014. There was no specific end date to the Employment Agreement and salary was to be negotiated after 2014.
Section 5 of the Employment Agreement is entitled Employee Covenants. Section 5.4 is a covenant not to solicit clients. In it Sullivan covenanted that for the period that he was employed by KLR and two years thereafter, he would not, among other things, either “directly or indirectly (a) solicit, call upon or attempt to do business with any client of Company in the area of Company’s business, (b) induce or attempt to induce any client of Company to cease doing business with Company [or] (c) interfere with company’s relationship with any such client.”
Section 5.10 of the Employment Agreement addresses “Remedies.” It provides, among other things: “if a court, in a final, non-appealable judgment, determines that Employee has breached his obligations under Sections 5.3 through 5.8, inclusive, of this Agreement, Company shall be entitled to recoveiy of any payments made to Employee during any period that the court determines such breach existed, . . .” It also includes a provision permitting the prevailing party in a suit brought under this section to recover litigation costs, including reasonable attorneys fees.
Section 6 is entitled Termination and Section 6.3 “Cause.” Cause includes “any action or conduct such that [Sullivan’s] continued employment would be materially detrimental to [KLR], . . . [and] ’’failure to perform a substantial portion of Sullivan’s obligations or duties and responsibilities assigned or delegated under this Agreement."
The parties spend many pages of their briefs arguing over the degree of effort and diligence with which Sullivan worked after the sale of SSF to KLR and whether Sullivan or Shuman made more inappropriate remarks to other employees during their tenure at KLR. However, for purposes of this motion it is sufficient to note that KLR never terminated (or attempted to terminate) Sullivan’s employment at KLR for “Cause,” or otherwise. In October 2012, Sullivan announced his decision to retire on February 21, 2014, his 66th birthday. In late 2013, Sullivan suggested that he might delay his retirement. (He had apparently previously announced his planned retirement on other occasions and then changed his mind.) Shuman, however, responded on behalf of KLR that Sullivan’s retirement proposal had already been accepted and the firm would not permit him to change his mind. A disagreement ensued, and Sullivan was eventually told to leave his office on November 4, 2013 and have no further contact with clients. He was placed on administrative leave, with salary and benefits, through February 21, 2014.
Viewing the summary judgment record in the light most favorable to KLR, it appears that sometime in October 2013, four KLR accountants who had previously worked at SSF told Sullivan that they were planning to leave KLR and start their own accounting firm. This included one accountant, Mark Schofer, who was a protégé of Sullivan and to whom Sullivan had been transitioning his clients in preparation for retirement. Over the next two months Sullivan met with these accountants at his home and discussed their plans with them. He loaned the group $125,000 to start their new practice. At some point, Sullivan went over a list of clients who Sullivan thought might be unhappy at KLR and willing to move their work to the new firm. Sullivan continued to recommend Scho-fer to his clients after he knew that Schofer would be leaving KLR. Sullivan was aware that Schofer and the others were meeting with KLR clients to solicit their business while they were still employed at KLR and before the other KLR principals knew of their plans. The departing accountants did not announce their plan to leave and start a new accounting firm until December 27, 2013. In 2014, the new firm did almost $1 million of business with former KLR clients.
KLR did not make a Purchase Price payment to Sullivan on March 1, 2014, when the first payment was due, or at any time thereafter. KLR’s position is that Sullivan’s conduct has relieved it of its obligations to make the monthly Purchase Price payments required by the Purchase Agreement. Sullivan took the steps required under the Purchase Agreement to accelerate the Purchase Price based on failure to make timely, monthly payments, making the entire Purchase Price and accrued interest due and payable immediately.
DISCUSSION
Summary judgment is granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). When reviewing a motion for summary judgment, the court considers the evidence presented in the light most favorable to the non-moving party. Flynn v. Boston, 59 Mass.App.Ct. 490, 491 (2003). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles it to a judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Importantly, “all evidentiary inferences must be resolved in favor of the [nonmoving party].” Boyd u. *454 National R.R. Passenger Corp., 446 Mass. 540, 544 (2006).
The non-moving party, however, cannot defeat a motion for summaiy judgment by merely asserting that facts are disputed. Mass.R.Civ.P. 56(e); LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Rather, to defeat summaiy judgment, the nonmoving party must “go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991). “Conclusoiy statements, general denials, and factual allegations not based on personal knowledge [are] insufficient.” Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Ass’n, 399 Mass. 886, 890 (1987), quoting Madsen v. Erwin, 395 Mass. 715, 721 (1985).
A. Sullivan’s Claim
Turning first to Sullivan’s claim of breach of contract, KLR opposes Sullivan’s motion for summary judgment by arguing that Sullivan was such a bad employee that he is not entitled to be paid the Purchase Price. For example, KLR asserts, among other things, that Sullivan bragged about his excessive compensation, failed to submit time sheets, slowed down in his accounting practice, and was inebriated at office parties. They contend that these and other similarly disparaging assertions are material, undisputed facts established by the summaiy judgment record. Suffice it to say, Sullivan vigorously contests them. In any event, they are not material to the resolution of Sullivan’s claim for breach of contract.
KLR argues that all of Sullivan’s bad conduct constitutes a failure of consideration and a material breach of contract freeing it from its obligation to pay the Purchase Price. KLR’s arguments avoid reference to the applicable provisions of the Purchase Agreement and the Employment Agreement. These Agreements, as noted above, are unambiguous and expressly govern the parties’ disputes in this case. The court can dismiss KLR’s arguments as a matter of law based on a straightforward review of the relevant provisions of these Agreements, irrespective of whether Sullivan could prove these factual contentions. See, Seaco Insurance Company v. Barbosa, 435 Mass. 772, 779 (2002) (the meaning of unambiguous contracts is a question of law for the court and can be resolved in a motion for summaiy judgment).
Under the Purchase Agreement, the sale of Sullivan’s interests in SFF occurred in October 2008. His interests in SFF were a part of and indistinguishable from the other principals’ interests in SSF. More importantly, the Purchase Agreement unambiguously provided the Purchase Price while deferred, became due on completion of the sale. Sullivan most specifically did not have to earn his right to receive the Purchase Price by meeting some unexpressed employment milestones with KLR over some undefined period of years.
Even more notably, the Purchase Agreement was specific in expressing the parties’ intent concerning what would happen if Sullivan did not continue his employment at KLR through at least Januaiy 1, 2013: Sullivan would forfeit 50% of the Purchase Price. As relevant to this case, if KLR had terminated Sullivan for cause under the carefully drafted “Cause” provisions of the Employment Agreement prior to that date, it could have invoked the forfeiture provisions of the Employment Agreement. This would have saved it 50% of the Purchase Price. KLR did not take this action. Clearly, under the Purchase Agreement and the Employment Agreement, what KLR cannot do is assert in 2014 that Sullivan failed to meet his obligations as an employee over the prior five years and therefore it is now entitled to withhold 100% of the Purchase Price.
Similarly, the Employment Agreement sets out with specificity KLR’s rights and remedies in the event that Sullivan violated any of his covenants under the Employment Agreement, including the covenant not to, directly or indirectly, interfere with KLR’s relationship with any of its clients. These remedies will be discussed in connection with KLR’s counterclaims. It is, however, perfectly clear that those remedies do not include the right to withhold the Purchase Price payments, which rights vested upon the sale of SSF’s assets to KLR nearly five years earlier.
Under the express terms of the Purchase Agreement, Sullivan is entitled to summary judgment establishing his right to all of the Purchase Price and interest then accrued, as of the date his notice of non-payment made that entire sum immediately due and payable.
B. The Counterclaim
KLR has counterclaimed for breach of the implied covenant of good faith and fair dealing based upon the assistance that he provided to Schofer and the other KLR accountants who left KLR to found their own accounting firm. Sullivan argues that the summaiy judgment record establishes, as a matter of law, that none of Sullivan’s acts caused KLR to lose any clients, as these departing accountants would have started their new firm and attracted all of the same clients without Sullivan’s assistance. According to Sullivan, because KLR cannot establish that any allegedly wrongful conduct caused KLR damage, he is entitled to summaiy judgment dismissing the counterclaim.
As a starting point, the court finds KLR’s invocation of the implied covenant misplaced. While the covenant of good faith and fair dealing is implied in eveiy contract, it may not be invoked to create rights not provided for in the existing contract. See Uno Restaurants, Inc. v Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004). In this case, the Employment Agreement carefully delineated the conduct in which Sullivan covenanted not to engage. If the conduct that KLR *455 attributes to Sullivan violated those express covenants, he was in breach of the Employment Agreement. If it did not, there was no breach and new duties and restrictions on Sullivan should not be inferred by the court. The court concludes that, viewed in the light most favorable to KLR, the evidence could support, if believed by the fact finder, a violation of the very broad covenants not to “directly or indirectly . . . induce or attempt to induce any client of Company to cease doing business with Company . . . [or] interfere with company’s relationship with any such client.”
Sullivan argues that there is no evidence that but for any act of Sullivan that might be said to breach those covenants any client that it lost would have stayed with KLR. The first response is that the remedies section of the Employment Agreement supplies a type of liquidated damages for covenant breach that does not require proof of causation. As noted above, Section 5.10 provides that: “if a court, in a final, non-appealable judgment, determines that Employee has breached his obligations under Sections 5.3 through 5.8, inclusive, of this Agreement, Company shall be entitled to recovery of any payments made to Employee during any period that the court determines such breach existed, . . .’’It appears that Sullivan was receiving approximately $45,800 a month from KLR during the month or months that Sullivan was purportedly acting in breach of his covenants. KLR therefore may prove a right to recover this amount at trial, even if it cannot prove that the conduct caused it to suffer a loss.
The court acknowledges that the counterclaim did not allege a right to recover under Section 5.10, but rather asserted a claim of breach of the covenant of good faith and fair dealing and resulting loss. Nonetheless, where the court concludes that KLR’s claim based on the implied covenant of good faith fails as a matter of contract interpretation, because the contract specifically defines conduct that will breach express covenants and then provides a specified remedy for the wrongful conduct alleged in the counterclaim, the counterclaim, as modified by this opinion, should not be dismissed as a matter of law.[2] In other words, where the wrongful conduct alleged in the complaint gives rise to a claim for breach of an express covenant, the complaint should not be dismissed because it asserts a claim for breach of an implied covenant.
ORDER
For the foregoing reasons, Sullivan’s motion for summary judgment on its claim for breach of contract is ALLOWED—Sullivan is entitled to judgment for the entire Purchase Price plus interest accrued to the date Sullivan’s notice caused that sum to become immediately due and payable. Sullivan’s motion for summary judgment dismissing KLR’s counterclaim is DENIED. KLR’s motion for summary judgment is DENIED.

 Sullivan’s motion to dismiss this second count for failure to state a claim was granted.

 he court also finds that while the evidence that Sullivan’s conduct caused KLR loss is very weak, it is a sufficient “toehold” such that summary judgment would be inappropriate on the issue of causation. See Marr Equipment Corp v. I.T.O. Corp., 14 Mass.App.Ct. 231, 235 (1982) (“A toehold, however, is enough to survive a motion for summary judgment”). The parties have not addressed the question of whether the liquidated damages-like remedy provision precludes a claim for actual losses occasioned by conduct in violation of the covenants or an alternative remedy.