Leibensperger, Edward P., J.
This case arises from plaintiff Timothy J. Sullivan’s sale of his public accounting firm, Sullivan, Shuman & Freedberg, LLC (SSF), to Kahn, Litwin, Renza & Co., Ltd. (KLR) and his subsequent employment with KLR. Sullivan asserts that after his employment relationship ended "with KLR, the firm wrongfully withheld payments for SSF’s goodwill due to him under the parties’ asset purchase agreement. KLR, in turn, maintains that Sullivan breached his employment agreement with KLR by *618 assisting employees in their efforts to leave KLR and start a competing firm. Contending that his employment agreement contains a liquidated damages provision, Sullivan now moves to preclude KLR from recovering actual damages should it succeed on its breach of contract claim. For the reasons that follow, Sullivan’s motion is DENIED.
BACKGROUND
In 2008, KLR acquired SSF, a public accounting firm in which Sullivan was a principal, pursuant to a Practice Contribution and Asset Purchase Agreement (Purchase Agreement). At the same time, Sullivan became an employee of KLR pursuant to an Employment Agreement.
Sullivan terminated his relationship with KLR in February 2014. Under the terms of the Purchase Agreement, this event triggered an obligation on the part of KLR to pay Sullivan $1 million plus interest for his goodwill in SSF (the Purchase Price) over a period of ten years. KLR, however, refused to make the payments and Sullivan filed this action for breach of contract against KLR.
In response to the lawsuit, KLR brought a counterclaim arguing that it was excused from paying the Purchase Price because Sullivan breached Section 5.4 of the Employment Agreement by assisting certain employees who left KLR to found a competing accounting firm that did business with former KLR clients. Section 5.4 is a covenant not to solicit clients. In it, Sullivan agreed that during his employment and for two years thereafter, he would not “directly or indirectly (a) solicit, call upon or attempt to do business with any client of Company in the area of Company’s business, (b) induce or attempt to induce any client of Company to cease doing business with Company, [or] (c) interfere with company’s relationship with any such client.” In April 2016, both parties moved for summary judgment on Sullivan’s breach of contract claim and KLR moved for summary judgment on its counterclaim. In May 2016, this Court (Kaplan, J.) ruled on the motions, granting Sullivan summary judgment on his breach of contract claim and reserving for trial the issue of whether Sullivan violated Section 5.4 [33 Mass. L. Rptr. 452].
ANALYSIS
Sullivan seeks to prohibit KLR from recovering any actual losses for his alleged breach of Section 5.4. He argues that the second clause in Section 5.10 of the Employment Agreement is a liquidated damages provision that prevents any recovery for actual losses. Section 5.10, titled “Other Remedies,” provides that:
If a court of competent jurisdiction determines that Company [KLR] has breached its obligations under this Agreement and failed to cure such breach as permitted by this Agreement, the remedy granted by such court may include the termination of the Employee’s [Sullivan’s] obligations under Section 5.4 and 5.6 of this Agreement, and in such event Employee may undertake any action prohibited by such Sections pending resolution of any appeal. If a court, in a final, non-appealable judgment, determines that Employee has breached his obligations under Section 5.3 through Section 5.8, inclusive, of this Agreement, Company shall be entitled to recovery of any payments made to Employee during any period that the court determines such breach existed, and such judgment may so provide. In the event of any litigation between Company and Employee, the prevailing party (i) shall be entitled to recover its costs and expenses incurred in connection with such suit or proceeding, including its reasonable attorneys fees, and (ii) shall be entitled to sums paid into the registry of court.
(Emphasis added.) KLR opposes the motion arguing that the second clause in Section 5.10 is not a liquidated damages provision.
Interpretation of a contract is a question of law for the court. Cady v. Marcella, 49 Mass.App.Ct. 334, 337-38 (2000). Whether a contract is ambiguous is likewise a question of law. Eigerman v. Putnam Invest., 450 Mass. 281, 287 (2007). When the language of a contract is free from ambiguity, the Court must enforce it according to its terms. Freelander v. G.&K Realty Corp., 357 Mass. 512, 516 (1979). Where the wording of the contract is ambiguous, however, there is a question of fact which must be resolved by the fact finder. Trafton v. Custeau, 338 Mass. 305, 307-08 (1959). Contract language is ambiguous where the “terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and the obligations undertaken.” Suffolk Constr. Co., Inc. v. Lonco Scaffolding Co., Inc., 47 Mass.App.Ct. 726, 729 (1999) (internal quotes omitted). Here, an ambiguity exists as to whether the second clause of Section 5.10 was intended to serve as a liquidated damages provision or to merely provide an additional remedy to KLR as an element of damages.
Liquidated damage clauses provide a method for compensating a non-breaching party without the necessity of proving causation or actual loss. See Morrison v. Richardson, 194 Mass. 370, 375-77 (1907). Such provisions are meant to serve as the exclusive remedy for the non-breaching party where it is anticipated that damages will be difficult to calculate should a breach occur. See NPS, LLC v. Minihane, 451 Mass. 417, 420-23 (2008). It is not at all clear, however, that the parties intended the recoupment provided for in Section 5.10’s second clause to be KLR’s exclusive remedy for breaches of Sections 5.3-5.8.[1]
Whether the second clause of Section 5.10 is a liquidated damages provision requires an understanding of the parties’ intent at the time of contracting. The clause neither describes the payments as “liquidated damages” nor explicitly labels them as KLR’s sole or *619 exclusive remedy. Rather, the clause is in a section titled “Other Remedies” and is couched between two other clauses detailing supplementary entitlements for both parties in the event of litigation. The first clause of Section 5.10 permits Sullivan to seek relief from his obligations under Sections 5.4 and 5.6 if KLR is found to have breached the Agreement, while the third clause entitles either party to attorneys fees and costs should one of them prevail in litigation. Given the second clause’s position within Section 5.10 and the Section’s title, it is reasonable to read the second clause as simply signaling KLR’s entitlement to an additional remedy (equitable disgorgement) beyond the standard damages theories for breach of contract. On the other hand, the second clause provides a specific measure of damages for a breach (violation of a non-solicitation obligation) for which actual damages would, be hard to measure. Accordingly, the meaning of the clause is ambiguous.
Because Section 5.10’s second clause is ambiguous, the Court cannot grant Sullivan’s motion. The issue of whether the clause is a liquidated damages provision must be resolved based on evidence presented by the parties regarding their intent at the time of contracting. Should the clause be found to be a liquidated damages provision, KLR may present argument and evidence for why the clause may be unenforceable. See TAL Fin. Corp. v. CSC Consulting, Inc., 446 Mass. 422, 430 (2006).
CONCLUSION
For the reason stated above, the plaintiffs motion in limine to preclude defendant from recovering losses other than liquidated damages is DENIED.

 Because the Court finds the relevant language ambiguous, the Court does not reach KLR’s alternative argument that the clause, if found to be a liquidated damages provision, is unenforceable.